

**PINNOCK & WAKEFIELD**
A Professional Corporation
David C. Wakefield, Esq.          Bar #: 185736
Theodore A. Pinnock, Esq.       Bar #: 153434
Michelle L. Wakefield, Esq.      Bar #: 200424
3033 Fifth Avenue, Suite 410
San Diego, CA 92103
Telephone: 619.858.3671
Facsimile: 619.858.3646

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

LINDA THOMPSON,
           **Plaintiff,**

    v.

**NATIONAL RAILROAD PASSENGER CORPORATION a.k.a. AMTRAK; And DOES 1 THROUGH 10, Inclusive**

           **Defendants.**

Case No. C 05 4134

**CIVIL COMPLAINT:**
DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS
[42 U.S.C. 12182(a) ET. SEQ; 42 U.S.C. 12184; 29 U.S.C. Section 794; CIVIL CODE 51, 52, 54, 54.1 HEALTH & SAFETY CODE 19995; BUSINESS & PROFESSIONS CODE 17200 et. seq.]

NEGLIGENCE
[CIVIL CODE 1714(a), 2338, 3333; EVIDENCE CODE 669(a)]

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
[CA CIVIL CODE 3333]

DEMAND FOR JURY TRIAL
[F.R.Civ.P. rule 38(b)]

**INTRODUCTION**

    Plaintiff LINDA THOMPSON herein complains, by filing this Civil Complaint in accordance with rule 8 of the Federal Rules of Civil Procedure in the Judicial District of the United States District Court of the Northern District of California, that Defendants have in the past, and

1

presently are, engaging in discriminatory practices against individuals with disabilities, specifically including minorities with disabilities. Plaintiff alleges this civil action and others substantial similar thereto are necessary to compel access compliance because empirical research on the effectiveness of Title III of the Americans with Disabilities Act indicates this Title has failed to achieve full and equal access simply by the executive branch of the Federal Government funding and promoting voluntary compliance efforts. Further, empirical research shows when individuals with disabilities give actual notice of potential access problems to places of public accommodation without a federal civil rights action, the public accommodations do not remove the access barriers. Therefore, Plaintiff makes the following allegations in this federal civil rights action:

## JURISDICTION AND VENUE

1.      The federal jurisdiction of this action is based on the Americans with Disabilities Act, 42 United States Code 12101-12102, 12181-12183 and 12201, et seq. Venue in the Judicial District of the United States District Court of the Northern District of California is in accordance with 28 U.S.C. § 1391(b) because a substantial part of Plaintiff's claims arose within the Judicial District of the United States District Court of the Northern District of California.

## INTRADISTRICT ASSIGNMENT

2.      Pursuant to Local Rule 3-2, this action should be assigned to the San Francisco Division as the events upon which this Civil Complaint are based took place in and a substantial part of Plaintiff's claims arose in Martinez, California, in Contra Costa County and in Ukiah, California in Mendocino County.

## SUPPLEMENTAL JURISDICTION

3.      The Judicial District of the United States District Court of the Northern District of California has supplemental jurisdiction over the state claims as alleged in this Complaint pursuant to 28 U.S.C. § 1367(a). The reason supplemental jurisdiction is proper in this action is because all the causes of action or claims derived from federal law and those arising under state law, as herein alleged, arose from common nucleus of operative facts. The common nucleus of operative facts, include, but are not limited to, the incidents where Plaintiff was denied full and equal access to

Defendants' facilities, goods, and/or services in violation of both federal and state laws when they attempted to enter, use, and/or exit Defendants' facilities as described below within this Complaint. Further, due to this denial of full and equal access, LINDA THOMPSON and other persons with disabilities were injured. Based upon the said allegations, the state actions, as stated herein, are so related to the federal actions that they form part of the same case or controversy and the actions would ordinarily be expected to be tried in one judicial proceeding.

## NAMED DEFENDANTS AND NAMED PLAINTIFF

4.     Defendants are, and, at all times mentioned herein, were, a business or corporation or franchise organized and existing and/or doing business under the laws of the State of California. Defendant NATIONAL RAILROAD PASSENGER CORPORATION a.k.a. AMTRAK (hereinafter "AMTRAK") is the owner, operator, lessor, and/or lessee of passenger fixed route buses, known as "Thruway Buses" and is located at 60 Massachusetts Avenue, NE, Washington DC, 20002.

5.     The words Plaintiff and Plaintiffs as used herein specifically include LINDA THOMPSON and persons associated with LINDA THOMPSON who accompanied LINDA THOMPSON to Defendants' facilities.

6.     Defendants Does 1 through 10, were at all times relevant herein subsidiaries, employers, employees, agents, of NATIONAL RAILROAD PASSENGER CORPORATION a.k.a. AMTRAK.  Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will pray leave of the court to amend this complaint to allege the true names and capacities of the Does when ascertained.

7.     Plaintiff is informed and believes, and thereon alleges, that Defendants and each of them herein were, at all times relevant to the action, the owner, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner, or joint venturer of the remaining Defendants and were acting within the course and scope of that relationship.  Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent

1    to, ratified, and/or authorized the acts alleged herein to each of the remaining Defendants.

2

3                              **CONCISE SET OF FACTS**

4    8.      Plaintiff LINDA THOMPSON has physical impairments in that she has Cerebral Palsy and

5    due to this and other impairments she has learned to successfully operate a scooter.   Plaintiff's said

6    physical impairments substantially limits one or more of the following major life activities:

7    walking.   Plaintiff is unable to use any bus without the availability of a wheelchair lift for her

8    scooter.

9    9.      49 C.F.R. Section 700.2 states that, "The creation of the National Railroad Passenger

10   Corporation (``Amtrak") was authorized by the Rail Passenger Service Act, as amended, 84 Stat.

11   1327, 45 U.S.C. 541 et seq. (``the Act"). The Act requires that Amtrak be operated and managed as

12   a for-profit corporation, that it be incorporated under the District of Columbia Business

13   Corporation Act, and subject to the provisions of that statute to the extent not inconsistent with the

14   Act, and that it provide a balanced transportation system by developing, operating, and improving

15   intercity rail passenger service. The Act also states that Amtrak will not be an agency or

16   establishment of the United States Government. Amtrak thus is a corporation created by Congress

17   to compete for the transportation business of the intercity traveller, to the end that the travelling

18   public will have a choice of travel modes. The address of its headquarters is 400 North Capitol

19   Street, NW., Washington, DC 20001. Telephone: (202) 383-3000." Plaintiff alleges that

20   AMTRAK is a private entity primarily engaged in the business of transporting people and is

21   operating public transportation services.  Plaintiff alleges that Defendant AMTRAK's

22   transportation services and operations affect commerce. Plaintiff alleges that Defendant AMTRAK

23   operates its Thruway buses on a regular, if not daily basis, offering at least two buses a day

24   traveling from Martinez, California, to Ukiah, California and back using the same route of travel,

25   thereby operating a fixed-route system.   The routes and fares for these Thruway buses may be

26   found posted publicly on the AMTRAK website, in AMTRAK schedule brochures, and can be

27   obtained by calling AMTRAK directly.  Plaintiff further alleges Defendant AMTRAK operates

28

4

new, used or remanufactured buses and vans and allege Defendant AMTRAK is violating 49 C.F.R. Part 37.

10.     On October 14, 2004, and October 16, 2004, Plaintiff LINDA THOMPSON utilized AMTRAK transportation services.  When Plaintiff patronized Defendant AMTRAK services, she was unable to use and/or had difficulty using the public accommodations' wheelchair lift on the Thruway buses operated by AMTRAK because they failed to comply with the requirements of the Americans With Disabilities Act and California Disability Laws.  Defendant AMTRAK not only failed to remove access barriers with the wheelchair lifts, but also failed to have adequate policies and procedures for working with members of the disability community to provide them accessible and safe services.  Plaintiff LINDA THOMPSON personally experienced the following barriers to access and discrimination based upon a lack of proper policies and procedures on the part of Defendant AMTRAK: On October 14, 2004, Plaintiff LINDA THOMPSON traveled from Vista, California to Ukiah, California, via Oakland, California. Upon arrival in Oakland, California, Plaintiff contacted NATIONAL RAILROAD PASSENGER CORPORATION a.k.a. AMTRAK (hereinafter "AMTRAK") to inquire into traveling on an AMTRAK train to reach the City of Martinez, California, and then travel on an AMTRAK Thruway Bus from Martinez, California to her ultimate destination of Ukiah, California.  As Plaintiff LINDA THOMPSON is unable to travel on a passenger bus unless the bus is equipped with a wheelchair lift, AMTRAK personnel informed Plaintiff via telephone that the AMTRAK Thruway bus that would carry Plaintiff from Martinez, California to Ukiah, California, was accessible and equipped with a wheelchair lift.  Upon arrival in Martinez, California, Plaintiff traversed to the bus area.  Plaintiff was informed by AMTRAK personal that the bus she was to travel on to Ukiah, California, was not accessible, as the wheelchair lift was inoperable.  Plaintiff LINDA THOMPSON became extremely upset.  As a result, the AMTRAK bus driver traded buses with another bus driver, on which there was a working wheelchair lifting device.

11.     Upon entering the bus, Plaintiff informed the female AMTRAK bus driver that she would inform the bus driver how to secure or tie down the scooter Plaintiff LINDA THOMPSON uses for

mobility.  Completely ignoring Plaintiff LINDA THOMPSON's concerns, the AMTRAK bus driver failed to secure or tie down the scooter that Plaintiff uses for mobility.  The AMTRAK bus driver proceeded to start the bus and travel down the road.  Plaintiff LINDA THOMPSON was forced to continuously struggle to remain upright and in her scooter.  A fellow passenger asked Plaintiff LINDA THOMPSON if she could assist Plaintiff in securing or tying down the scooter.  Plaintiff LINDA THOMPSON asked this passenger for help, but one (1) of the securing ties failed to be tight enough.  As a result, Plaintiff LINDA THOMPSON and her scooter tipped halfway over, causing Plaintiff to slam into the side of the bus.  The assisting passenger who had kindly tries to assist Plaintiff LINDA THOMPSON grabbed Plaintiff and pulled Plaintiff into an upright position once again.  The assisting passenger then yelled to the AMTRAK bus driver that Plaintiff LINDA THOMPSON had fallen over in her scooter.  The AMTRAK bus driver yelled back at the assisting passenger that another bus driver had informed the current AMTRAK bus driver that she did not need to secure or tie down Plaintiff's scooter due to the size and heaviness of the scooter.  Plaintiff LINDA THOMPSON yelled to the AMTRAK bus driver that no one had asked Plaintiff and that Plaintiff was placed in an unsafe situation.  Another passenger voluntarily assisted Plaintiff and successfully secured or tied down Plaintiffs' scooter.  On the road to Ukiah, California, the AMTRAK bus driver stopped the bus numerous times for gasoline, radiator water, and to allow passengers to use the restrooms, as the restroom on the bus was out of order.  Despite this, the AMTRAK bus driver tried to secure Plaintiff's scooter or even inquired as to whether Plaintiff was now in a safe and secure position while the bus was stopped.

12.    Originally, Plaintiff LINDA THOMPSON was due to arrive in Ukiah at 5:55 P.M. and Plaintiff was to contact a Dial-A-Ride transport upon her arrival to be transported to her hotel.  The Dial-A-Ride service closed at 7:00 P.M.  The AMTRAK bus did not arrive in Ukiah, California, until 7:10 P.M.   As a result, Plaintiff LINDA THOMPSON was stranded at a Burger King in Ukiah, California, a city she did not know.  Plaintiff LINDA THOMPSON was forced to traverse by herself, at night, through the city street one and one-half (1 ½) mile to her hotel.

13.    Plaintiff LINDA THOMPSON's return trip from Ukiah, California, to Martinez, California,

via the AMTRAK Thruway Bus was equally as traumatic.  On October 15, 2004, Plaintiff had been originally scheduled to leave Ukiah, California, on the 10:20 A.M. AMTRAK bus.  Again, Plaintiff LINDA THOMPSON made it extremely clear when she scheduled her return bus ride that she needed a bus with a wheelchair lift.  Plaintiff LINDA THOMPSON arrived at the bus loading area for the AMTRAK Thruway Bus from Ukiah, California, to Martinez, California, only to find that she was expected to board the AMTRAK bus with the inoperable wheelchair lift.  This is the same bus that the AMTRAK bus driver told her about on her initial ride on October 14, 2004.  The AMTRAK bus driver made a cellular telephone call overheard by Plaintiff in which the AMTRAK bus driver stated the compartment door to the wheelchair lift had been frozen shut for at least one (1) week and that he had reported in the problem several times.  After the AMTRAK bus driver completed his call, he informed Plaintiff LINDA THOMPSON that AMTRAK was sending a taxicab to drive Plaintiff to her destination.  Plaintiff asked him to clarify what this meant and how long this process would take.  The AMTRAK bus driver returned to his bus and drove away without responding to Plaintiff's inquiry.

14.     Plaintiff LINDA THOMPSON immediately called the AMTRAK toll-free "800" telephone number to make her inquiry.  The AMTRAK telephone operator refused to answer Plaintiff's questions and told her she would have to call back.  After numerous telephone calls, plaintiff was finally connected to an AMTRAK personnel member named Marge. Marge told Plaintiff that there was an AMTRAK bus traveling through Ukiah, California, to Martinez, California, but this bus also failed to have a wheelchair lift.  Marge informed Plaintiff that she would have to wait to the following morning, Sunday morning, to be able to ride on an AMTRAK bus with a wheelchair lift. Plaintiff again became extremely upset and explained to Marge that she was stranded at a Burger King restaurant, had already given up her hotel room, and had no place to stay the night in Ukiah, California.  Finally, AMTRAK employee, Marge agreed to have the AMTRAK bus driver switch buses with one that was to go to Eureka, California, on which was a working wheelchair lift.  This bus arrived to pick up Plaintiff LINDA THOMPSON at 2:30 P.M.

15.     The problems encountered with the AMTRAK bus system placed Plaintiff four and one-

half (4 ½) hours behind schedule with her travel plans. As a result, Plaintiff LINDA THOMPSON was forced to re-schedule the 3:10 P.M. AMTRAK train ride from Martinez, California, to Oakland, California, for a train leaving at 6:40 P.M. Further, Plaintiff was unable to make her 6:50 P.M. flight from Oakland, California, to Orange County, which was the last flight of the day. The next flight out was not until the following morning, Sunday, October 16, 2004, at 9:50 A.M. As a result, Plaintiff was again stranded by the actions of AMTRAK. Plaintiff actually arrived in Oakland, California at 7:35 P.M. and she had not idea what to do or where to go. AMTRAK's only response was to merely gave Plaintiff a bus voucher and the bus outside the station took Plaintiff to the BART system. Plaintiff LINDA THOMPSON was forced to find accessible accommodations in Oakland, California, with no notice on a Saturday night alone.

16.     Pursuant to federal and state law, Defendants are required to remove barriers to their existing facilities. Further, Defendants had actual knowledge of their barrier removal duties under the Americans with Disabilities Act and the Civil Code before January 26, 1992. Also, Defendants should have known that individuals with disabilities are not required to give notice to a governmental agency before filing suit alleging Defendants failed to remove architectural barriers.

17.     Plaintiff believes and herein alleges Defendants' facilities have access violations not directly experienced by Plaintiff which preclude or limit access by others with disabilities, including, but not limited to, Space Allowance and Reach Ranges, Accessible Route, Protruding Objects, Ground and Floor Surfaces, Platform Lifts (Wheelchair Lifts), Windows, Doors, Entrances, Drinking Fountains and Water Coolers, Water Closets, Toilet Stalls, Urinals, Lavatories and Mirrors, Sinks, Storage, Handrails, Grab Bars, and Controls and Operating Mechanisms, Alarms, Detectable Warnings, Signage, and Telephones. Accordingly, Plaintiff alleges Defendants are required to remove all architectural barriers, known or unknown. Also, Plaintiff alleges Defendants are required to utilize the ADA checklist for Readily Achievable Barrier Removal approved by the United States Department of Justice and created by Adaptive Environments.

18.     Based on these facts, Plaintiff alleges she was discriminated against each time she patronized Defendant AMTRAK's public transportation services. Plaintiff was extremely upset

due to Defendants' conduct. Further, Plaintiff LINDA THOMPSON experienced pain in her legs, back, arms, shoulders and wrists when she attempted to use Defendant AMTRAK's services.

**WHAT CLAIMS IS PLAINTIFF ALLEGING AGAINST EACH NAMED DEFENDANT**

19. NATIONAL RAILROAD PASSENGER CORPORATION a.k.a. AMTRAK; and Does 1 through 10 will be referred to collectively hereinafter as "Defendants."

20. Plaintiff avers that the Defendants are liable for the following claims as alleged below:

**DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS**

FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS- **Claims Under The Americans With Disabilities Act Of 1990**

CLAIM I AGAINST ALL DEFENDANTS: **Denial Of Full And Equal Access**

21. Based on the facts plead at ¶¶ 8 - 18 above and elsewhere in this complaint, Plaintiff was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations. Plaintiff alleges Defendants are a public accommodation owned, leased and/or operated by Defendants. Defendants' existing facilities and/or services failed to provide full and equal access to Defendants' facility as required by 42 U.S.C. § 12182(a). Thus, Plaintiff was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff was denied equal access to Defendants' existing facilities.

22. Plaintiff LINDA THOMPSON has physical impairments as alleged in ¶ 8 above because her conditions affect one or more of the following body systems: neurological, musculoskeletal, special sense organs, and/or cardiovascular. Further, Plaintiff's said physical impairments substantially limits one or more of the following major life activities: walking. In addition, Plaintiff cannot perform one or more of the said major life activities in the manner, speed, and duration when compared to the average person. Moreover, Plaintiff has a history of or has been classified as having a physical impairment as required by 42 U.S.C. § 12102(2)(A).

CLAIM II AGAINST ALL DEFENDANTS: **Failure To Remove Transportation Barriers**

23. Based on the facts plead at ¶¶ 8 - 18 above and elsewhere in this complaint, Plaintiff LINDA THOMPSON was denied full and equal access to Defendants' goods, services, facilities,

privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendant AMTRAK. Defendants failed to remove barriers as required by 42 U.S.C. § 12182(a), 42 U.S.C. § 12184. Plaintiffs are informed and believe, and thus allege that transportation barriers that are structural in nature exist at the following physical elements of Defendants' facilities: wheelchair lift.

24.     42 U.S.C. Section 12184 states as its general rule that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce.   For purposes of subsection (a) of 42 U.S.C. Section 12184, discrimination includes the imposition or application by a entity described in subsection (a) of this section of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully enjoying the specified public transportation services provided by the entity, unless such criteria can be shown to be necessary for the provision of the services being offered.

25.     For purposes of subsection (a) of 42 U.S.C. Section 12184, discrimination also includes the failure of such entity to make reasonable modifications consistent with those required under section 42 U.S.C. Section 12182(b)(2)(A)(ii), provide auxiliary aids and services consistent with the requirements of section 42 U.S.C. Section 12182(b)(2)(A)(iii), and remove barriers consistent with the requirements of 42 U.S.C. Section 12182(b)(2)(A) and with the requirements of section 42 U.S.C. Section 12183(a)(2).

26.     For purposes of subsection (a) of 42 U.S.C. Section 12184, discrimination also includes the purchase or lease by such entity of a new vehicle (other than an automobile, a van with a seating capacity of less than 8  passengers, including the driver, or an over-the-road bus) which is to be used to provide specified public transportation and for which a solicitation is made after the 30th day following the effective  date of the Americans With Disabilities Act, that is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. This new vehicle need not be readily accessible to and usable by such individuals if the new

vehicle is to be used solely in a demand responsive system and if the entity can demonstrate that such system, when viewed in its entirety, provides a level of service to such individuals equivalent to the level of service provided to the general public.

27. For purposes of subsection (a) of 42 U.S.C. Section 12184, discrimination also includes the purchase or lease by such entity of an over-the-road bus which does not comply with the regulations issued under 42 U.S.C. Section 12186(a)(2) of this title and any other failure of such entity to comply with such regulations.

28. Lastly, for purposes of subsection (a) of 42 U.S.C. Section 12184, discrimination also includes the purchase or lease by such entity of a new van with a seating capacity of less than 8 passengers, including the driver, which is to be used to provide specified public transportation and for which a solicitation is made after the 30th day following the effective date of the Americans With Disabilities Act that is not readily accessible to or usable by individuals with disabilities, including individuals who use wheelchairs. This new van need not be readily accessible to and usable by such individuals if the entity can demonstrate that the system for which the van is being purchased or leased, when viewed in its entirety, provides a level of service to such individuals equivalent to the level of service provided to the general public.

29. 42 U.S.C. Sec. 12182 states that a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable constitutes an act of discrimination and a violation of the Americans With Disabilities Act. This further applies where an entity fails to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

30. 42 U.S. C. Section 12182(b)(2)(B) discusses a Fixed Route System. 42 U.S.C. Section 12182(b)(2)(B) states that it shall be considered discrimination for a private entity which operates a

fixed route system and which is not subject to 42 U.S.C. Section 12184 to purchase or lease a vehicle with a seating capacity in excess of 16 passengers (including the driver) for use on such system, for which a solicitation is made after the 30th day following the effective date of the Americans With Disabilities Act, that is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. Further, if a private entity which operates a fixed route system and which is not subject to 42 U.S.C. Section 12184 purchases or leases a vehicle with a seating capacity of 16 passengers or less (including the driver) for use on such system after the effective date of the Americans With Disabilities Act that is not readily accessible to or usable by individuals with disabilities, it shall be considered discrimination for such entity to fail to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities.

31.     42 U.S.C. Section 12182(b)(2)(C) discusses a Demand Responsive System. 42 U.S.C. Section 12182(b)(2)(C) states that discrimination includes the failure of a private entity which operates a demand responsive system and which is not subject to 42 U.S.C. Section 12184 to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities; and the purchase or lease by such entity for use on such system of a vehicle with a seating capacity in excess of 16 passengers (including the driver), for which solicitations are made after the 30th day following the effective date of the Americans With Disabilities Act, that is not readily accessible to and usable by individuals with disabilities (including individuals who use wheelchairs) unless such entity can demonstrate that such system, when viewed in its entirety, provides a level of service to individuals with disabilities equivalent to that provided to individuals without disabilities.

32.     Plaintiff alleges Defendant AMTRAK's fixed route system is discriminatory as Defendant AMTRAK is a private entity which operates a fixed route system which made a solicitation after the 30th day following the effective date of the ADA for new or remanufactured buses or van that

are not readily accessible to and usable by individuals with disabilities, including individuals who use scooters and wheelchairs. Plaintiff alleges Defendant AMTRAK's fixed route system is discriminatory as Defendant AMTRAK's equivalent service and Defendant AMTRAK fails to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use scooters and wheelchairs, equivalent to the level of service provided to individuals without disabilities. Plaintiff alleges Defendant AMTRAK's demand responsive system is discriminatory as the system fails to ensure a level of service to individuals with disabilities, including individuals who use scooters and wheelchairs, equivalent to the level of service provided to individuals without disabilities; and Defendant AMTRAK purchased or leased vehicles with a seating capacity in excess of 16 passengers (including the driver), for which solicitations were made after the 30th day following the effective date of the ADA, that are not readily accessible to and usable by individuals with disabilities (including individuals who use scooters and wheelchairs). Plaintiff allege Defendant AMTRAK purchased or leased new vehicles (other than an automobile, a van with a seating capacity of less than 8 passengers, including the driver, or an over-the-road bus) which are to be used to provide specified public transportation and for which a solicitation was made after the 30th day following the effective date of the ADA, that are not readily accessible to and usable by individuals with disabilities, including individuals who use scooters and wheelchairs. Plaintiff alleges Defendant AMTRAK purchased or leased new vans with a seating capacity of less than 8 passengers, including the driver, which is to be used to provide specified public transportation and for which a solicitation was made after the 30th day following the effective date of the ADA that are not readily accessible to or usable by individuals with disabilities, including individuals who use scooters and wheelchairs.

33.    Title III requires places of public accommodation to remove transportation barriers that are structural in nature to existing facilities. [See, 42 United States Code 12182(b)(2)(A)(iv), 42 U.S.C. § 12184.] Failure to remove such barriers and disparate treatment against a person who has a known association with a person with a disability are forms of discrimination. [See 42 United

States Code 12182(b)(2)(A)(iv).]  Thus, Plaintiff LINDA THOMPSON was subjected to

discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188

because Plaintiff was denied equal access to Defendants' existing facilities.

CLAIM III: **Failure To Modify Practices, Policies And Procedures**

34.        Based on the facts plead at ¶¶ 8 - 18 above and elsewhere in this complaint, Defendants

failed and refused to provide a reasonable alternative by modifying its practices, policies and

procedures in that they failed to have a scheme, plan, or design to assist Plaintiff LINDA

THOMPSON and/or others similarly situated in entering and utilizing Defendants' services, as

required by 42 U.S.C. § 12188(a).

35.        Thus, Plaintiff LINDA THOMPSON was subjected to discrimination in violation of 42

United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff was denied equal

access to Defendants' existing facilities.

CLAIM IV: **ADA Title II And Rehabilitation Act**

36.        Based on the facts plead at ¶¶ 8 - 18 above and elsewhere in this complaint, Defendants

discriminated against Plaintiff LINDA THOMPSON based on her disabilities in violation of 42

U.S.C. 12134 and 29 U.S.C. Section 794.  Further, Defendants must comply with 29 U.S.C.

Section 794 because Defendants receive substantial federal assistance.  Under 29 U.S.C. Section

794, no qualified individual with a disability, shall, by reason of her disability be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance or any program or activity conducted by any

Executive agency or by the United States Postal Service.  Regulation interpret Section 504 of the

Rehabilitation Act as follows:  Under 49 C.F.R 1014.149, dealing with the Surface Transportation

Board,, "Except as otherwise provided in Sec. 1014.150, no qualified handicapped person shall,

because the agency's facilities are inaccessible to or unusable by handicapped persons, be denied

the benefits of, be excluded from participation in, or otherwise be subjected to **discrimination**

under any program or activity conducted by the agency." Under 49 CFR 807.103, dealing with the

National Transportation Safety Board, "No qualified handicapped person shall, on the basis of

handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity conducted by the agency.". In 49 CFR Section 807.149, "Except as otherwise provided in Sec. 807.150, no qualified handicapped person shall, because the agency's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity conducted by the agency.." And, Under 49 CFR Section 807.150, "a) General. The agency shall operate each program or activity so that the program or activity, when viewed in its entirety, is readily accessible to and usable by handicapped persons. This paragraph does not-- (1) Necessarily require the agency to make each of its existing facilities accessible to and usable by handicapped persons; or (2) Require the agency to take any action that it can demonstrate would result in a fundamental alteration in the nature of a program or activity or in undue financial and administrative burdens. In those circumstances where agency personnel believe that the proposed action would fundamentally alter the program or activity or would result in undue financial and administrative burdens, the agency has the burden of proving that compliance with Sec. 807.150(a) would result in such alteration or burdens. The decision that compliance would result in such alteration or burdens must be made by the agency head or his or her designee after considering all agency resources available for use in the funding and operation of the conducted program or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action would result in such an alteration or such burdens, the agency shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that handicapped persons receive the benefits and services of the program or activity." Defendant AMTRAK receives substantial federal assistance, and as a result, must comply with 29 U.S.C. Section 794. Plaintiff alleges Defendant AMTRAK has failed to so comply and demands relief as stated below.

///
///
///
///

SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS - **CLAIMS UNDER CALIFORNIA ACCESSIBILITY LAWS**

CLAIM I: **Denial Of Full And Equal Access**

37.     Based on the facts plead at ¶¶ 8 - 18 above and elsewhere in this complaint, Plaintiff was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants as required by Civil Code Sections 54 and 54.1.  Defendants' facility violated California's Title 24 Accessible Building Code by failing to provide access to Defendants' facilities due to violations pertaining to the Space Allowance and Reach Ranges, Accessible Route, Protruding Objects, Ground and Floor Surfaces, Platform Lifts (Wheelchair Lifts), Windows, Doors, Entrances, Drinking Fountains and Water Coolers, Water Closets, Toilet Stalls, Urinals, Lavatories and Mirrors, Sinks, Storage, Handrails, Grab Bars, and Controls and Operating Mechanisms, Alarms, Detectable Warnings, Signage, and Telephones.

38.     These violations denied Plaintiff full and equal access to Defendants' facility. Thus, Plaintiff was subjected to discrimination pursuant to Civil Code §§ 51, 52, and 54.1 because Plaintiff was denied full, equal and safe access to Defendants' facility, causing severe emotional distress.

CLAIM II: **Failure To Modify Practices, Policies And Procedures**

39.     Based on the facts plead at ¶¶ 8 - 18 above and elsewhere herein this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies, and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff and/or others similarly situated in entering and utilizing Defendants' services as required by Civil Code § 54.1. Thus, Plaintiff was subjected to discrimination in violation of Civil Code § 54.1.

CLAIM III: **Violation Of The Unruh Act**

40.     Based on the facts plead at ¶¶ 8 - 18 above and elsewhere herein this complaint and because Defendants violated the Civil Code § 51 by failing to comply with 42 United States Code § 12182(b)(2)(A)(iv) and 42 U.S.C. § 12183(a)(2), Defendants did and continue to discriminate

16

against Plaintiff and persons similarly situated in violation of Civil Code §§ 51, 52, and 54.1.

41.     Based on the facts plead at ¶¶ 8 - 18 above, Claims I, II, and III of Plaintiff's Second Cause Of Action above, and the facts elsewhere herein this complaint, Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural, non-architectural, and communication barriers at Defendants' public accommodation. Plaintiff alleges that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community. Plaintiff alleges there is a state and national public interest in requiring accessibility in places of public accommodation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants. Plaintiff desires to return to Defendants' places of business in the immediate future. Accordingly, the Plaintiff alleges that a structural or mandatory injunction is necessary to enjoin compliance with state civil rights laws enacted for the benefit of individuals with disabilities.

42.     Wherefore, Plaintiff prays for damages and relief as hereinafter stated.

**Treble Damages Pursuant To Claims I, II, III Under The California Accessibility Laws**

43.     Defendants, each of them respectively, at times prior to and including, the month of October, 2004, and continuing to the present time, knew that persons with physical disabilities were denied their rights of equal access to all potions of this public facility. Despite such knowledge, Defendants, and each of them, failed and refused to take steps to comply with the applicable access statutes; and despite knowledge of the resulting problems and denial of civil rights thereby suffered by Plaintiff and other similarly situated persons with disabilities. Defendants, and each of them, have failed and refused to take action to grant full and equal access to persons with physical disabilities in the respects complained of hereinabove. Defendants, and each of them, have carried out a course of conduct of refusing to respond to, or correct complaints about, denial of disabled access and have refused to comply with their legal obligations to make Defendants' AMTRAK facilities accessible pursuant to the Americans With Disability Act Access Guidelines (ADAAG) and Title 24 of the California Code of Regulations (also known as the California Building Code).

Such actions and continuing course of conduct by Defendants, and each of them, evidence despicable conduct in conscious disregard of the rights and/or safety of Plaintiff and of other similarly situated persons, justifying an award of treble damages pursuant to sections 52(a) and 54.3(a) of the California Civil Code.

44.     Defendants, and each of their actions have also been oppressive to persons with physical disabilities and of other members of the public, and have evidenced actual or implied malicious intent toward those members of the public, such as Plaintiff and other persons with physical disabilities who have been denied the proper access to which they are entitled by law.  Further, Defendants, and each of their, refusals on a day-to-day basis to correct these problems evidence despicable conduct in conscious disregard for the rights of Plaintiff and other members of the public with physical disabilities.

45.     Plaintiff prays for an award of treble damages against Defendants, and each of them, pursuant to California Civil Code sections 52(a) and 54.3(a), in an amount sufficient to make a more profound example of Defendants and encourage owners, lessors, and operators of other public facilities from willful disregard of the rights of persons with disabilities.  Plaintiff does not know the financial worth of Defendants, or the amount of damages sufficient to accomplish the public purposes of section 52(a) of the California Civil Code and section 54.3 of the California Civil Code.

46.     Wherefore, Plaintiff prays for damages and relief as hereinafter stated.

///

## PLAINTIFF LINDA THOMPSON'S THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS- <u>Negligence</u>

47.     Based on the facts plead at ¶¶ 8 - 18 above and elsewhere in this complaint, Defendants owed Plaintiff LINDA THOMPSON a statutory duty to make their facility accessible and owed Plaintiff LINDA THOMPSON a duty to keep Plaintiff LINDA THOMPSON reasonably safe from known dangers and risks of harm.  This said duty arises by virtue of legal duties proscribed by various federal and state statutes including, but not limited to, ADA, ADAAG, Civil Code 51, 52,

54, 54.1 and Title 24 of the California Administrative Code and applicable 1982 Uniform Building Code standards as amended.

48.     Title III of the ADA mandates removal of architectural barriers and prohibits disability discrimination.  As well, Defendants' facility, and other goods, services, and/or facilities provided to the public by Defendants are not accessible to and usable by persons with disabilities as required by Health and Safety Code § 19955 which requires private entities to make their facility accessible before and after remodeling, and to remove architectural barriers.

49.     Therefore, Defendants engaged in discriminatory conduct in that they failed to comply with known duties under the ADA, ADAAG, Civil Code 51, 52, 54, 54.1, 54.3, ADAAG, and Title 24, and knew or should have known that their acts of nonfeasance would cause Plaintiff LINDA THOMPSON emotional, bodily and personal injury.  Plaintiff alleges that there was bodily injury in this matter because when Plaintiff attempted to enter, use, and exit Defendants' establishment and services, Plaintiff experienced pain in her legs, back, arms, shoulder, and wrists.  Plaintiff further alleges that such conduct was done in reckless disregard of the probability of said conduct causing Plaintiff LINDA THOMPSON to suffer bodily or personal injury, anger, embarrassment, depression, anxiety, mortification, humiliation, distress, and fear of physical injury. Plaintiff LINDA THOMPSON alleges that such conduct caused LINDA THOMPSON to suffer the injuries of mental and emotional distress, including, but not limited to, anger, embarrassment, depression, anxiety, mortification, humiliation, distress, and fear of physical injury.  Plaintiff LINDA THOMPSON additionally alleges that such conduct caused LINDA THOMPSON to suffer damages as a result of these injuries.

50.     Wherefore, Plaintiff prays for damages and relief as hereinafter stated.

PLAINTIFF LINDA THOMPSON'S FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS - **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

51.     Based on the facts plead at ¶¶ 8 - 18 above and elsewhere herein this complaint, Plaintiff LINDA THOMPSON experienced discrimination by Defendant AMTRAK due to architectural barriers, a lack of properly trained personnel, and lack of proper

policy's and procedures to ensure members of the disability community have access to accessible services and transportation vehicles when riding on AMTRAK buses.

52.     As owners and/or operators of mass public transportation services, Defendant AMTRAK had a duty to provide accessible features on its buses and to  properly train their personnel to accommodate the needs of a member of the disability community as required under federal and state disability laws or have a proper policy in place to accommodate the needs of a member of the disability community as required under federal and state disability laws.

53.     Defendant AMTRAK knew, or should have known, that their failure to exercise due care in providing the required accessible features on their buses and in the performance of properly training their personnel or in not having a proper policy for accommodating the needs of a member of the disability community as required by federal and state disability laws would cause Plaintiff LINDA THOMPSON severe emotional distress.  Further Defendant AMTRAK  knew, or should have known, that their failure to exercise due care by not providing accessible features on its buses and not properly training their personnel or in not having a proper policy for accommodating the needs of a member of the disability community as required by federal and state disability laws would cause Plaintiff LINDA THOMSPON severe emotional distress.

54.     Defendant AMTRAK breached their duty of care to Plaintiff LINDA THOMPSON because it failed to provide accessible features on its buses and failed to properly train their personnel and failed to have a proper policy for accommodating the needs of a member of the disability community as required by federal and state disability laws, causing Plaintiff LINDA THOMPSON to not only be subjected to the lack of a wheelchair lift, but to also be forced to travel in a bus without having her scooter properly secured and being freighted for her personal safety, and be repeatedly forced to miss connecting transportation resulting in Plaintiff being stranded in two (2) California cities without knowing where to go or what she could do.

55.     As a proximate result of Defendant AMTRAK's conduct, Plaintiff LINDA THOMPSON was extremely frightened, terrified for her personal safety, angry, embarrassed and ashamed.

56.     As a further proximate result of Defendant AMTRAK's conduct and the consequences

proximately caused by it, as hereinabove alleged, Plaintiff LINDA THOMPSON suffered severe emotional distress and mental suffering.

57.     Wherefore, Plaintiff LINDA THOMPSON prays for judgment as hereinafter set forth.

PLAINTIFF LINDA THOMPSON'S FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS - **Violation of Business and Professions Code section 17200 et seq.**

58.     Plaintiff incorporates by reference herein the facts plead at ¶¶ 8 - 18 above and elsewhere in this complaint.

59.     Defendant AMTRACK failed to remove access barriers within the public accommodations' wheelchair lifts and failed to have in place proper policies and procedures to accommodate the needs of members of the disability community.  As a direct result of Defendant AMTRAK's actions, Plaintiff LINDA THOMPSON was forced to cancel numerous travel plans and find hotel accommodations in a strange city all of which came at a direct cost to Plaintiff. Business and Professions Code section 17200 defines "unfair competition" and prohibited activities as, ". . . any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."  Defendants' acts and omissions alleged herein are violations of the below-enumerated federal and state statutory requirements and public policy and therefore constitute unfair competition and/or prohibited activities as such violations are *unlawful, unfair or fraudulent business acts or practices*.

60.     Pursuant to federal law, Defendants are required to remove barriers to their existing facilities.  Title III of the Americans With Disabilities Act requires places of public accommodation to remove transportation barriers. [42 United States Code 12182 and 42 U.S.C. 12184.]  Failure to remove such barriers and disparate treatment against a person who has a known association with a person with a disability are forms of discrimination.  [See 42 United States Code 12182(b)(2)(A)(iv) and 12184].  Defendants failed to remove transportation barriers while operating its Thruway buses.  Thus, Plaintiff LINDA THOMPSON was subjected to discrimination

in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff was denied equal access to Defendants' existing facilities and transportation services. Also, Defendants' facilities failed to provide full and equal access to Defendants' transportation services as required by 42 U.S.C. § 12182(a). Thus, Plaintiff LINDA THOMPSON was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff was denied equal access to Defendants' existing facilities and transportation services. Additionally, as a result of said access barriers, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff LINDA THOMPSON and/or others similarly situated in entering and utilizing Defendants' transportation services, as required by 42 U.S.C. § 12188(a). Thus, Plaintiff LINDA THOMPSON was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff was denied equal access to Defendants' transportation services.

61.     Pursuant to California state law, Defendants are also required to remove barriers to their existing facilities and services. Defendants' failure to remove barriers to their existing facilities and transportation services denied Plaintiff LINDA THOMPSON full and equal access to Defendants' facilities and services. Thus, Plaintiff was subjected to discrimination pursuant to Civil Code §§ 51, 52, and 54.1 because Plaintiff was denied full, equal and safe access to Defendants' facility and services. Further, Defendants' facility, and other goods, services, and/or facilities provided to the public by Defendants are not accessible to and usable by persons with disabilities as required by Health and Safety Code § 19955 which requires private entities to make their facility accessible before and after remodeling, and to remove architectural barriers. Additionally, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies, and procedures in that they failed to have a scheme, plan, or design to assist Plaintiff LINDA THOMPSON and/or others similarly situated in entering and utilizing Defendants' services as required by Civil Code § 54.1. Thus, Plaintiff LINDA THOMPSON was subjected to discrimination in violation of Civil Code § 54.1. Also, under the Unruh Act, Defendants violated Civil Code § 51 by failing to comply

with 42 United States Code 12182(b)(2)(A)(iv), Defendants did and continue to discriminate against Plaintiff LINDA THOMPSON and persons similarly situated in violation of Civil Code §§ 51, 52, and 54.1. Further, Defendants had actual knowledge of their barrier removal duties under the Americans with Disabilities Act, the California Civil Code, and the California Health & Safety Code before January 26, 1992.

62. Defendants' alleged unlawful, unfair, or fraudulent business acts or practices are specifically prohibited by the specific introductory language of B&P section 17200 that is stated in the conjunctive. Consequently, Plaintiff LINDA THOMPSON alleges that Defendants' acts and omissions constitute a violation specifically of this section 17200 of the Business and Professions Code.

63. Plaintiff LINDA THOMPSON seeks injunctive relief requiring Defendants to remedy the disabled access violations present at the Defendants' facilities and services. Ancillary to this injunctive relief, Plaintiff LINDA THOMPSON also request restitution for amounts paid by Plaintiff who attempted to patronize Defendants' facilities and services during the time period that the subject premises have been in violation of the disabled access laws of the State of California and as a result of patronizing Defendants' facilities and services was made to endure additional costs due to Defendants' actions.

64. Plaintiff LINDA THOMPSON seeks, on behalf of the general public, injunctive relief requiring Defendants to comply with the disabled access laws of the State of California at facilities and for services offered throughout the State of California built, owned, operated, and/or controlled by Defendants.

65. WHEREFORE, Plaintiff LINDA THOMPSON prays for judgment and relief as hereinafter set forth.

DEMAND FOR JUDGMENT FOR RELIEF:

A.      For general damages pursuant to Cal. Civil Code §§ 52, 54.3, 3281, and 3333;

B.      For $4,000 in damages pursuant to Cal. Civil Code § 52 for each and every offense of

Civil Code § 51, Title 24 of the California Building Code, ADA, and ADA Accessibility Guidelines;

C.      In the alternative to the damages pursuant to Cal. Civil Code § 52 in Paragraph B above, for $1,000 in damages pursuant to Cal. Civil Code § 54.3 for each and every offense of Civil Code § 54.1, Title 24 of the California Building Code, ADA, and ADA Accessibility Guidelines;

D.      For injunctive relief pursuant to 42 U.S.C. § 12188(a) and Cal. Civil Code § 55. Plaintiffs request this Court enjoin Defendants to remove all transportation barriers at its facilities.

E.      For attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, and Cal. Civil Code § 55;

F.      For treble damages pursuant to Cal. Civil Code §§ 52(a), and 54.3(a);

G.      For Restitution pursuant to Business and Professions section 17200;

H.      A Jury Trial and;

I.      For such other further relief as the court deems proper.

Respectfully submitted:

PINNOCK & WAKEFIELD, A.P.C.

Dated: October 12, 2005

By: _Michelle L. Wakefield_

DAVID C. WAKEFIELD, ESQ.
MICHELLE L. WAKEFIELD, ESQ.
Attorneys for Plaintiff

JS 44 - CAND (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

**I.(a) PLAINTIFFS**

LINDA THOMPSON

**DEFENDANTS**

NATIONAL RAILROAD PASSENGER CORPORATION a.k.a. AMTRAK

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

San Diego

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

WASHINGTON D.C.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David C. Wakefield, Esq.; PINNOCK & WAKEFIELD, A.P.C.,
3033 Fifth Avenue, Suite 410, San Diego, CA  92103
Tel: (619) 858-3671

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF
(For diversity cases only) AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☑ Original Proceeding
- ☐ Removed from State Court
- ☐ Remanded from Appellate Court
- ☐ Reinstated or Reopened
- ☐ Transferred from Another district (specify)
- ☐ Multidistrict Litigation
- ☐ Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth In Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl.Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence Habeas Corpus: | | ☐ 870 Taxes (US Plaintiff or Defendant | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 535 Death Penalty | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/ disab - Empl | ☐ 555 Prison Condition | | | |
| | ☑ 446 Amer w/ disab - Other | | | | |
| | ☐ 480 Consumer Credit | | | | |
| | ☐ 490 Cable/Satellite TV | | | | |

**VI. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 U.S.C. Sections 12181 - 12184 et. seq.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $☐____ CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY**    PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
**(PLACE AND "X" IN ONE BOX ONLY)**    ☑ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE  10/12/05

SIGNATURE OF ATTORNEY OF RECORD  *Michelle L. Wakefield*

JS 44 Page 2
(Rev. 11/04)

### INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.   (a) Plaintiffs - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.   Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.   Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.   Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

V.   Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI.   Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.   Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   Related Cases. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases. Date and Attorney Signature.

Date and Attorney Signature. Date and sign the civil cover sheet.

# United States District Court

## NORTHERN DISTRICT OF CALIFORNIA

E-Filing

LINDA THOMPSON

**SUMMONS IN A CIVIL CASE**

CRB

**v.**

CASE NUMBER:

C 05 4134

NATIONAL RAILROAD PASSENGER
CORPORATION a.k.a. AMTRAK

TO: (Name and address of defendant)

*above defendant*

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

DAVID C. WAKEFIELD, ESQ.; THEODORE A. PINNOCK, ESQ.
PINNOCK & WAKEFIELD, A.P.C.
3033 FIFTH AVENUE, SUITE 410
SAN DIEGO, CA 92103
TEL: 619.858.3671
FAX: 619. 858.3646

an answer to the complaint which is herewith served upon you, within ⎯20⎯ days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in
the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking

OCT 13 2005

CLERK

DATE_____

ANNA SPRINKLES

_____
(BY) DEPUTY CLERK